Filed 3/9/23  P. v. Wilkerson CA4/2
See concurring and dissenting opinion.

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077362 |
| v. | (Super.Ct.No. RIF1905231) |
| RUSSELL ALVON WILKERSON, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Judge.  Affirmed in part, vacated in part, and remanded with directions.

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski, Don Ostertag and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

1

Russell Alvon Wilkerson, Jr., appeals from a judgment after a jury convicted him of first degree murder and found true a lying-in-wait special circumstance, a gang-murder special circumstance, a gang enhancement, and a gang-related firearm enhancement. The trial court also found that Wilkerson admitted a prior serious felony enhancement, and the court sentenced Wilkerson to life without the possibility of parole plus five years in state prison.

Wilkerson argues that (1) the prosecutor committed prejudicial misconduct by misstating the law on aiding and abetting in closing argument, (2) the lying-in-wait special circumstance is unconstitutionally vague, (3) the trial court prejudicially erred by not forcing the prosecution to stipulate that the relevant gang constituted a criminal street gang, (4) there was not sufficient evidence of predicate crimes necessary to support the gang-related enhancements and the gang special circumstance under the law as it existed when he was tried, and (5) he did not admit that he had a prior serious felony conviction for purposes of imposing the five-year enhancement. We find no prejudicial error.

The parties agree, however, that, as a result of the passage of Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333), the true findings on the gang enhancement and the gang-related firearm enhancement must be vacated. But the People contend that the true finding on the gang special circumstance should not be vacated, because Assembly Bill 333 is an unconstitutional legislative amendment of Proposition 21, the voter initiative that added the gang special circumstance to the list of circumstances punishable by life in prison without the possibility of parole or death in Penal Code section 190.2. (Unlabeled statutory references are to the Penal Code.) We

2

disagree.  We vacate the true findings on the gang-related enhancements and the gang special circumstance and remand for proceedings consistent with this opinion.  We otherwise affirm the judgment.

BACKGROUND

A. *August 2019 Incident*

One night in August 2019, law enforcement responded to a report of a possible battery at a residence on El Sol Way in Riverside, California.  William C. was the victim and spoke to the investigating officer.  William reported that he had been parked in front of a family member's house and honking his car's horn, when a man William identified as Boo (and who was otherwise identified as Anthony Mahan) approached William's car and started yelling.  Mahan threw a can of beer at William's car, took William's cell phone, and threw it too.  William drove to a nearby house on the same street and called the police.

The investigating officer knew Mahan and knew that he was a member of the 2800 Blocc Crips street gang.  The 2800 Blocc Crips claim El Sol Way as their territory.  The officer feared that the gang would retaliate against William because he had called the police, so the officer advised William that it would be in his best interest to leave the area.

B. *The Killing*

Two weeks later, on September 1, 2019, William returned to El Sol Way to help fix someone's van.  William worked on the van in the driveway of Jenny F.'s house near

the cul-de-sac at the end of that street. He started working on it in the afternoon and worked through the night, when it was dark outside.

That night, neighbors of Jenny's noticed a van in their driveway with the lights on. One of them went outside to investigate and called the police. There was broken glass on the ground, and no one responded when the neighbor called out to the van.

Law enforcement arrived and found William slumped over in the driver's seat with his T-shirt soaked in blood. The windows of the front driver's and passenger's doors were shattered. William was pronounced dead at the scene. He died as a result of a single gunshot wound to his chest.

C. *The Investigation*

Jeffrey Adcox was the lead detective assigned to investigate the incident. Given that the shooting occurred on El Sol Way, Adcox suspected that it involved the 2800 Blocc Crips. The gang unit had previously attached a GPS tracking device to Wilkerson's car. The parties stipulated that the tracking device showed that Wilkerson's car arrived at the end of the cul-de-sac of El Sol Way at 9:32 p.m. on the night of the shooting, which was about 12 minutes before law enforcement was called.

Officers obtained surveillance footage from two nearby houses. The officers found a single nine-millimeter shell casing near the mailbox in front of the house across the street from William's van. The shell casing was located directly in front of one of the houses that had cameras that recorded the shooting.

Just before the shooting, video showed Wilkerson parked at the end of the cul-de-sac and sitting in the driver's seat of his car. Reuben Kelly, Eddie Smith, and Jeffrey

4

Taylor were huddled around Wilkerson's car and speaking to Wilkerson through the passenger window. The recordings then show a vehicle's headlights come into view behind Wilkerson's car. The vehicle appears to be traveling on El Sol Way toward the end of the cul-de-sac. Wilkerson got out of the car. Wilkerson, Kelly, and Taylor "disburse[d]" in the direction of the houses at the end of the cul-de-sac, where they hid. Smith moved in the opposite direction, toward the mailbox where the shell casing was found. Smith ducked and crouched behind a car parked in front of the mailbox while apparently looking down the street at the approaching vehicle. The video then shows the van driven by William start to turn into a driveway across the street from Smith.

One of the cameras that recorded the shooting captured both audio and video. Adcox identified the voices on the recording. He had listened to approximately 3,000 of Wilkerson's phone calls as part of a subsequent wiretap investigation, as well as phone calls that Taylor made from jail.

About 15 seconds before the shooting, Taylor tells Smith, "Move cuz, move down." Smith responds, "I'm fittin' to do my shit, cuz." As the van approaches the driveway and turns into it, Wilkerson says, "Cap him. Cap him cuz. Go on! Cap him cuz! Got to." Smith then fires one shot at the van. After the shooting, Taylor tells Smith, "Hold on, Eddie. Now break him up. Hey." Adcox explained that "break him up" means "to finish him off."

After the shot, the van moved forward slightly and then came to a full stop with its lights on. Wilkerson asked Smith if he "got down," and Smith answered, "Yeah cuz." Wilkerson responded, "That's how we do it." Taylor directed Smith to "get out of here,"

5

and an unidentified male voice can be heard telling Smith to "[h]it the back fence." As directed, Smith jumped the back fence of a neighbor's house. Taylor and Wilkerson drove away in their respective cars.

Law enforcement later conducted a wiretap investigation of active members of the 2800 Blocc Crips and were able to find Smith in another state, where they arrested him. Adcox interviewed Smith and played the recording of the shooting for him. Smith admitted that he was a member of the 2800 Blocc Crips and that he was the shooter. He admitted that he had been "part of the plan before the shooting." He was the shooter because he was the youngest member of the gang there.

On the basis of one of the wiretapped conversation between Wilkerson and another member of the 2800 Blocc Crips, Adcox believed that Wilkerson was present on El Sol Way in August 2019, when William called the police.

D. *Gang Evidence*

A detective in the gang intelligence unit of the local police department testified in detail about the 2800 Blocc Crips. He described the 2800 Blocc Crips as a violent criminal street gang whose primary activities as of September 2019 were drug sales, weapons possession, robberies, violent assaults, and shootings. The detective confirmed that the 2800 Blocc Crips claim El Sol Way as their territory. He testified about three predicate offenses committed by various members of the 2800 Blocc Crips in 2015 and 2017. (We describe the testimony about the predicate crimes in more detail below.)

The detective testified that Wilkerson is a member of the 2800 Blocc Crips and is considered an "OG" or "original gangster", which the detective explained means

6

"someone who has authority to make decisions and speak on behalf of the gang." Wilkerson's father is considered "a longstanding OG" of the 2800 Blocc Crips, and several of Wilkerson's siblings are also members. In addition, the detective confirmed that Kelly and Taylor are also members of the 2800 Blocc Crips. On the night of the shooting, Wilkerson was the oldest and longest-standing member of the 2800 Blocc Crips present. Smith was the youngest and had been a member of the gang for the shortest time.

Asked whether in his opinion the shooting of William was in furtherance of the 2800 Blocc Crips' activities based on a hypothetical mirroring the facts of the case, the detective said that he believed it was. It would benefit the gang to "address a primary threat to the gang," which the detective described as "being someone who would cooperate against them and identify them in crimes." The detective opined that the older gang members' "encouraging, coaching, [and] subsequently congratulating" furthered the gang's activities also. The older gang members' mere presence would encourage a shooting "if someone ha[d] previously been identified as a threat to the gang." And the verbalized "orders to shoot" "could not have easily been ignored or rejected." The detective testified that a young member of the 2800 Blocc Crips "trying [to] put in work around older members" would shoot if told to. If the young gang member refused to shoot, then that member would have "no utility . . . in the gang," and the gang "would need to get rid of" that person.

7

DISCUSSION

A. *Alleged Prosecutorial Misconduct*

Wilkerson argues that during closing argument the prosecutor prejudicially misstated the law on aiding and abetting and that defense counsel rendered ineffective assistance by failing to object. We reject the argument because the prosecutor did not misstate the law.

1. *Relevant Proceedings*

The prosecution's sole theory of the case was that Wilkerson committed first degree murder by aiding and abetting Smith in shooting and killing William. The jury was instructed that in order to convict Wilkerson under that theory the prosecution had to prove that (1) "[t]he perpetrator committed the crime," (2) Wilkerson "knew that the perpetrator intended to commit the crime," (3) either "[b]efore or during the commission of the crime, [Wilkerson] intended to aid and abet the perpetrator in committing the crime," and (4) Wilkerson's "words or conduct did in fact aid and abet the perpetrator's commission of the crime." (CALCRIM No. 401.) The jury was further instructed: "Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." (CALCRIM No. 401.)

During closing argument, the prosecutor argued that Wilkerson did "in fact, aid, facilitate, promote, encourage or instigate" Smith's killing of William as follows: "Take your pick which one you want to use. [¶] We know that [Wilkerson] aided [Smith] because [Wilkerson] told [Smith] when to shoot. We know [Wilkerson] facilitated it

8

because they were all by his vehicle . . . before the murder occurred. . . . [¶] We know that [Wilkerson] promoted and encouraged because [Wilkerson] was telling [Smith] to shoot before he shot. And we know [Wilkerson] instigated it. Take your pick."

Defense counsel responded that assuming that it was Wilkerson who said, "Cap him cuz" (which counsel otherwise contested), there was no evidence that Wilkerson did "in fact" aid and abet Smith because there was no evidence that Smith heard what was said (regardless of who said it).

In rebuttal, the prosecutor stated that whether Smith actually heard Wilkerson was a "moot point." The prosecutor explained: Defense counsel wants "you to believe that somehow you have to focus on [Smith] when he pulled the trigger. That is not true. [¶] The law requires that [Wilkerson] aided, facilitated, promoted, encouraged or instigated [Smith] in the commission of this crime. That is what the law requires. Now, as added evidence, it is plain as day that [Smith] not only heard what they were saying, but was definitely encouraged by it." The prosecutor played a video of the shooting. He pointed out that Kelley, Taylor, and Smith were huddled around Wilkerson's car before the shooting and then intentionally moved in certain directions when William approached in the van because "that was the plan, and they knew exactly what was going to happen." Defense counsel did not object to the prosecutor's description of the evidence or the law of aiding and abetting during rebuttal.

9

2. *Analysis*

Wilkerson argues that the prosecutor committed prejudicial conduct by misstating the law on aiding and abetting when he told the jury that it was a "moot point" whether Smith heard Wilkerson say, "Cap him cuz." We do not agree.

"In California, the law regarding prosecutorial misconduct is settled: 'When a prosecutor's intemperate behavior is sufficiently egregious that it infects the trial with such a degree of unfairness as to render the subsequent conviction a denial of due process, the federal Constitution is violated. Prosecutorial misconduct that falls short of rendering the trial fundamentally unfair may still constitute misconduct under state law if it involves the use of deceptive or reprehensible methods to persuade the trial court or the jury.'" (*People v. Masters* (2016) 62 Cal.4th 1019, 1052.) "It is prosecutorial misconduct to misstate the law." (*People v. Fayed* (2020) 9 Cal.5th 147, 204.)

In general, a criminal ""'"defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety."'" (*People v. Centeno* (2014) 60 Cal.4th 659, 674 (*Centeno*).) "The defendant's failure to object will be excused if an objection would have been futile or if an admonition would not have cured the harm caused by the misconduct." (*Ibid.*)

The People contend that Wilkerson forfeited the claim of error by failing to object to the prosecutor's alleged misstatement, and we agree. "A prosecutor's misstatements of law are generally curable by an admonition from the court." (*Centeno*, *supra*, 60 Cal.4th at p. 674.) "Nothing in this record indicates that an objection would have been futile.

10

Nor was the prosecutor's argument so extreme or pervasive that a prompt objection and admonition would not have cured the harm." (*Ibid.*) We nevertheless address the merits of the claim because Wilkerson argues that the failure amounted to ineffective assistance of his trial counsel.

As the jury was properly instructed, proof of aider and abettor liability requires proof of "the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime." (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.) Wilkerson argues that the prosecutor's misstatement of the law relieved the prosecution of the obligation to prove Wilkerson's actus reus as an aider and abettor. Wilkerson claims: "If Smith did not hear [Wilkerson's] words of encouragement, then those words played no part in the actual commission of [the] crime. That is, [Wilkerson's] statement did not *in fact* assist Smith in committing [the] crime. Yet, the prosecutor told jurors that they could nevertheless find [Wilkerson] guilty of murder *even if Smith did not hear him*. [Citation.] This was a misstatement of law which gave jurors an improper theory on which to convict."

Wilkerson's argument takes out of context the prosecutor's statement that it was "moot" whether Smith heard Wilkerson say, "Cap him cuz." After the prosecutor made that statement, the prosecutor went on to explain that the reason it was moot was that there was so much other evidence that Wilkerson "aided, facilitated, promoted, encouraged or instigated" Smith in killing William. For example, Kelly, Taylor, and Smith were huddled around Wilkerson's car before the shooting and disbursed when the van approached, which the prosecution argued demonstrated that the killing was planned.

11

Thus, the prosecution's argument was that regardless of whether the jury believed that Smith heard Wilkerson say "Cap him cuz," the prosecution still proved beyond a reasonable doubt that Wilkerson in fact aided and abetted Smith in killing William because other evidence overwhelmingly demonstrated that Wilkerson in fact assisted Smith in the killing. The prosecutor did not improperly tell the jury that it could convict Wilkerson on an aiding and abetting theory without finding he committed the actus reus. Rather, the prosecutor permissibly emphasized that Wilkerson's statement to Smith was far from the only evidence of that actus reus. The prosecution consequently did not relieve the jury of its obligation to find Wilkerson's actus reus as an aider and abettor.

For all of the foregoing reasons, we conclude that the prosecutor did not misstate the law on aiding and abetting.

B. *The Gang-Related Enhancements and the Gang Special Circumstance*

Wilkerson argues that under the law as it existed when he was tried there was insufficient evidence to support the jury's true findings on the gang-related enhancements (former § 186.22, subd. (b)(1); § 12022.53, subds. (d), (e)) and the gang special circumstance (§ 190.2, subd. (a)(22)) because the proof was insufficient to establish that two or more predicate offenses were committed.[1] In the alternative, he argues that

---

[1] The People do "not address [Wilkerson's] claim that there was insufficient evidence of the predicate offenses under the law that governed at the time of trial" because of their concession that "remand is appropriate in this case under" Assembly Bill 333, which they claim will require them "to retry [Wilkerson] as to the gang allegations." The People's assessment is mistaken. Under principles of double jeopardy, Wilkerson "may not be retried if the judgment is reversed because, as a matter of law, the evidence was insufficient to support a conviction." (*People v. Eroshevich* (2014) 60 Cal.4th 583,

remand of the gang-related enhancements and the gang special circumstance is required because of Assembly Bill 333's amendments to section 186.22, which he claims apply retroactively. The People concede, and we agree, that Assembly Bill 333 applies to this case and that the gang-related enhancements should be vacated. But the People argue that we should not vacate the true finding on the gang special circumstance because Assembly Bill 333 unconstitutionally amended Proposition 21. We reject the People's challenge to the constitutionality of Assembly Bill 333, and we therefore vacate the true finding on the gang special circumstance as well. We also reject Wilkerson's challenge to the sufficiency of the evidence of the predicate crimes under the law as it existed when he was tried, so we remand for further proceedings.

1. *Predicate Crimes*

The gang expert testified that three predicate offenses established the pattern of criminal gang activity necessary to demonstrate that the 2800 Blocc Crips was a criminal street gang: (1) On March 10, 2015, two members of the 2800 Blocc Crips committed "some robberies"; (2) on May 6, 2015, two different members of the 2800 Blocc Crips committed a robbery; and (3) on August 23, 2017, law enforcement officers stopped a car with two 2800 Blocc Crips gang members in response to a call reporting a "problem with

---

591; *Tibbs v. Florida* (1982) 457 U.S. 31, 42.) Thus, if we conclude that the evidence was insufficient to support the gang-related enhancements and the gang special circumstance, then we need not consider the effect of Assembly Bill 333 on those findings. (See *People v. Renteria* (2022) 13 Cal.5th 951, 961, fn. 6, 973 (*Renteria*) [concluding the evidence was insufficient to support a gang enhancement based on the law as it existed at the time of trial, before Assembly Bill 333, and thus not addressing the amendments to the law].)

13

the area" or requesting "help." One of the responding officers and the gang expert testified about the 2017 incident. Officers found "a handgun and large amount of marijuana and large quantity of cash" in the car. Law enforcement stopped a second car involved in the incident. Two other 2800 Blocc Crips gang members were in the second car. Officers found "Xanax and a loaded handgun" in that car.

The People introduced felony complaints filed in relation to each of the three predicate offenses. For the May 2015 predicate offense, the defendants were charged with robbery, a substantive gang offense (former § 186.22, subd. (a)), and a gang enhancement (former § 186.22 subd. (b)(1)), among other things. The 2800 Blocc Crips were identified as the relevant gang. For the March 2015 robberies, none of the defendants was charged with a substantive gang offense or any gang-related enhancements. For the 2017 offenses, three defendants were charged with several offenses related to drug possession and firearm possession. One defendant was charged with one count of being a felon in possession of a firearm in violation of section 29800, subdivision (a)(1), and another defendant was charged with unlawfully possessing a loaded firearm in violation of section 25850, subdivision (c)(6). No defendant was charged with murder or robbery in relation to the 2017 incident.

The jury was instructed that, in determining whether the 2800 Blocc Crips had engaged in a pattern of criminal gang activity, the jury could consider "[a]ny combination of two or more of the following crimes, or two or more occurrences of one or more of the following crimes: murder and/or robbery." As to whether the jury could consider the charged murder, the jury was instructed that if it found Wilkerson "guilty of a crime in

14

this case, you may consider that crime in deciding whether one of the group's primary activities was commission of that crime and whether a pattern of criminal gang activity has been proved."[2]

2. *New Law*

Assembly Bill 333 became effective on January 1, 2022, and made numerous changes to section 186.22. (*People v. E.H.* (2022) 75 Cal.App.5th 467, 477 (*E.H.*).) The law previously "defined a 'criminal street gang,' as 'any ongoing organization, association, or group of three or more persons . . . whose members *individually or collectively* engage in, or have engaged in, a pattern of criminal gang activity.' (Former § 186.22, subd. (f), italics added.) Assembly Bill 333 narrowed the definition to 'an ongoing, organized association or group of three or more persons . . . whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity.' (Assem. Bill 333, § 3, revised § 186.22, subd. (f), italics added.)" (*Ibid.*)

Assembly Bill 333 also altered the definition of "'pattern of criminal gang activity'" in the statute. (*E.H.*, *supra*, 75 Cal.App.5th at p. 477; § 186.22, subd. (e)(1) & (2).) The statute previously defined a "'pattern of criminal gang activity'" as "the commission of, attempted commission of, conspiracy to commit, or solicitation of,

---

[2]     Wilkerson contends that the "jurors were explicitly instructed that they '*must* consider [the charged murder] in deciding whether . . . a pattern of criminal gang activity has been proved.'" That is the oral instruction reflected in the reporter's transcript. In the written instruction, however, the jury was told that it "may consider" the underlying offense if it found Wilkerson guilty. When there is a discrepancy between the orally given and written instructions, "the written instructions provided to the jury will control." (*People v. Mills* (2010) 48 Cal.4th 158, 201.) We accordingly consider only the written instruction and disregard Wilkerson's argument concerning the oral instruction.

15

sustained juvenile petition for, or conviction of two or more of [certain specified offenses], provided at least one of the offenses occurred after the effective date of this chapter and the last of the offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons . . . ." (Former § 186.22, subd. (e); *E.H.*, at p. 477.)  Assembly Bill 333 made the following changes to that definition:  (1) "the predicate offenses now must have been committed by two or more 'members' of the gang (as opposed to any persons)" (*E.H.*, at p. 477; § 186.22, subd. (e)(1)); (2) "the predicate offenses must be proven to have '*commonly* benefited a criminal street gang'" (*E.H.*, at p. 477; § 186.22, subd. (e)(1)), and the common benefit must be "more than reputational" (§ 186.22, subd. (e)(1)); (3) "the last predicate offense must have occurred within three years of the date of the currently charged offense" (*E.H.*, at p. 477; § 186.22, subd. (e)(1)); (4) "the list of qualifying predicate offenses has been reduced" (*E.H.*, at pp. 477-478; § 186.22, subd. (e)(1)); and (5) "the currently charged offense no longer counts as a predicate offense" (*E.H.*, at p. 478; § 186.22, subd. (e)(2)).

Assembly Bill 333 further amended the statute so that it now defines "to benefit, promote, further, or assist" as meaning "to provide a common benefit to members of a gang where the common benefit is more than reputational."  (§ 186.22, subd. (g).)  The statute identifies some permissible examples of common benefits including but "not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (*Ibid.*)

16

Under subdivision (e)(1) of 12022.53, enhancements that ordinarily apply only to defendants who personally use firearms in the commission of enumerated felonies are made applicable to any principal in the felony who also violated the gang enhancement statute. (*People v. Lopez* (2021) 73 Cal.App.5th 327, 347.) Because the gang-related firearm enhancement in subdivision (e) of section 12022.53 applies when a principal violates the gang enhancement statute (*id.*, subd. (e)(1)(A)), the amendments to the gang enhancement statute affected the gang-related firearm enhancement too. (*Lopez*, *supra*, at pp. 347-348.)

In addition to the substantive changes to section 186.22, Assembly Bill 333 added section 1109, under which a defendant charged with a gang enhancement under section 186.22, subdivision (b), "may request a bifurcated trial, in which the defendant is first tried for the underlying offense, and only upon conviction is tried for any gang enhancements. (§ 1109, subd. (a).)" (*People v. Sek* (2022) 74 Cal.App.5th 657, 665 (*Sek*).)

We agree with the parties that under *In re Estrada* (1965) 63 Cal.2d 740, 744, Assembly Bill 333 applies retroactively to defendants, like Wilkerson, whose judgments of conviction were not final when Assembly Bill 333 became effective. (*E.H.*, *supra*, 75 Cal.App.5th at p. 478.)

3. *Gang-Related Enhancements*

The People concede that reversal of the gang enhancement and the gang-related firearm enhancement is required because the jury instructions allowed the jury to make

17

findings on grounds that are no longer permissible and the error was prejudicial. We agree.

To determine whether reversal is required in this case, we apply the harmlessness standard articulated in *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). (*E.H.*, *supra*, 75 Cal.App.5th at p. 479; *Sek*, *supra*, 74 Cal.App.5th at p. 668.) Under that standard, reversal is required unless it appears beyond a reasonable doubt that the failure to require proof of the new elements for the enhancements at Wilkerson's trial did not contribute to the true findings on the gang enhancements. (*E.H.*, at p. 479.)

We cannot conclude that allowing the jury to make findings on grounds that are no longer permissible was harmless beyond a reasonable doubt. First, as already explained, the jury was instructed that if it found Wilkerson guilty of the charged murder, it could rely on that offense to establish the pattern of criminal gang activity necessary to find that the 2800 Blocc Crips constituted a criminal street gang. The statute no longer allows the charged offenses to be used for that purpose. (§ 186.22, subd. (e)(2).) Second, the jury also was instructed that the predicate offenses did not need to be gang-related, whereas now the jury must find that they "'*commonly* benefited a criminal street gang.'" (*E.H.*, *supra*, 74 Cal.App.5th at p. 477; § 186.22, subd. (e)(1).) The only evidence that the March 2015 robberies were gang-related is that the defendants charged with robbery were members of the 2800 Blocc Crips. The defendants were not charged with any gang-related offenses or enhancements in relation to that incident, and there was no evidence that the robberies were committed to commonly benefit the gang.

18

Given that the jury was allowed to make findings on grounds that are no longer permissible, we vacate the true findings on the enhancements under section 186.22, subdivision (b)(1) and section 12022.53, subdivisions (d) and (e)(1). (See *E.H.*, *supra*, 75 Cal.App.5th at p. 480.)

4.  *Gang Special Circumstance*

Proposition 21 was passed by voters in 2000 and added the gang special circumstance to section 190.2. The gang special circumstance applies if the jury finds that "[t]he defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of Section 186.22, and the murder was carried out to further the activities of the criminal street gang." (§ 190.2, subd. (a)(22).)

The People argue that Assembly Bill 333 is an unconstitutional legislative amendment of Proposition 21, so we therefore should not vacate the true finding on the gang special circumstance. We disagree.

Section 190.2 sets forth a list of special circumstances for which the punishment is either death or life without the possibility of parole. (*Id.*, subd. (a).) In 2000, "Proposition 21 was enacted to combat gang crime." (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 905.) In an uncodified section of the initiative, voters found and declared that: "Gang-related felonies should result in severe penalties. Life without the possibility of parole or death should be available for murderers who kill as part of any gang-related activity." (Voter Information Guide, Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 2 subd. (h), p. 119 (hereinafter referred to as Prop. 21 Guide).) To achieve that end,

19

Proposition 21 added the gang special circumstance to the list of special circumstances punishable by death or life without the possibility of parole. (Prop. 21 Guide, § 11, pp. 121-122; § 190.2, subd. (a)(22).) As already described, that special circumstance requires the prosecution to prove that "[t]he defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of section 186.22." (§ 190.2, subd. (a)(22).) As also already explained, Assembly Bill 333 amended the definition of criminal street gang in section 186.22, subdivision (f). (*E.H.*, *supra*, 75 Cal.App.5th at p. 477.)

Pursuant to the California Constitution, a statute adopted by voter initiative may be amended "by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval." (Cal. Const., art. II, § 10, subd. (c); *People v. Kelly* (2010) 47 Cal.4th 1008, 1024.) Proposition 21 provides that its provisions can be amended only by voter approval or by a two-thirds vote in both houses of the Legislature. (Prop. 21 Guide, § 39, p. 131.) Legislation amends a voter initiative if the "'legislative act [is] designed to change an existing initiative statute by adding or taking from it some particular provision.'" (*People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 571.)

It is undisputed that Assembly Bill 333 "was enacted without voter approval, and without the requisite two-thirds votes in both houses of the Legislature." (*People v. Lee* (2022) 81 Cal.App.5th 232, 240 (*Lee*), review granted Oct. 19, 2022, S275449.) The People contend that Assembly Bill 333's changes to section 186.22, subdivision (f), are therefore unconstitutional. The People argue that the voters who enacted Proposition 21

20

intended to freeze the statutory definition of a criminal street gang in section 186.22, subdivision (f), as it then existed. The Courts of Appeal are divided on whether Assembly Bill 333 impermissibly amended Proposition 21. (Compare *People v. Rojas* (2022) 80 Cal.App.5th 542, 557-558 (*Rojas*), review granted Oct. 29, 2022, S275835 [Assembly Bill 333 unconstitutionally amended Prop. 21] with *Lee*, *supra*, at p. 245 [Assembly Bill 333 did not unconstitutionally amend Prop. 21].) The Supreme Court has granted review to resolve the conflict.

*Rojas* reasoned that Assembly Bill 333 amended Proposition 21 because it narrowed the scope of conduct made punishable by the gang special circumstance. (*Rojas*, *supra*, 80 Cal.App.5th at p. 555.) Because the Legislature amended Proposition 21 without complying with the two-thirds amendment requirement for Proposition 21, *Rojas* concluded that Assembly Bill 333 "is unconstitutional to the extent it would amend that initiative." (*Rojas*, at p. 557.) Rather than "void Assembly Bill 333 in its entirety" (*ibid.*), *Rojas* disallowed application of Assembly Bill 333's amendments to the gang special circumstance so that it did "not alter the scope or effect of section 190.2, subdivision (a)(22)" (*Rojas*, at p. 558). Thus, according to *Rojas*, the definition of criminal street gang in the gang special circumstance statute remains the same as it was when Proposition 21 was enacted.

In *Lee*, another appellate court reached a contrary conclusion. (*Lee*, *supra*, 81 Cal.App.5th at p. 245.) *Lee* rejected the argument that Assembly Bill 333 impermissibly narrowed the scope of the gang special circumstance by amending the definition of a "criminal street gang" in section 186.22. (*Lee*, at p. 241.) Applying ordinary principles

21

of statutory interpretation, *Lee* analyzed the voter's intent as expressed in Proposition 21's language and found no basis to conclude that the voters intended to prohibit future amendments to the criminal street gang definition for purposes of the gang special circumstance. (*Id.* at p. 242.)

On the contrary, *Lee* explained that other provisions of Proposition 21 demonstrated that "the electorate clearly knew how to express the intent to freeze a statutory definition" when it enacted the initiative: "In sections dedicated to amending portions of the 'Three Strikes' law, Proposition 21 changed the '"lock-in" date for determining the existence of qualifying offenses (such as violent or serious felonies)' under the Three Strikes law. [Citation.] In two of those sections, Proposition 21 provided that 'for all offenses committed on or after the effective date of this act, all references to existing statutes in [§§ 667, subds. (c)-(g), 1170.125] are to those statutes *as they existed on the effective date of this act, including amendments made to those statutes by this act*.' (Voter Information Guide, Primary Elec., *supra*, text of Prop. 21, §§ 14, 16, pp. 123–124, some italics omitted; see former §§ 667.1, 1170.125.)" (*Lee*, *supra*, 81 Cal.App.5th at p. 243.) In light of the express time-specific references in those other provisions of Proposition 21 and the absence of any such reference in the provision adding the gang special circumstance (*Lee*, at p. 243), *Lee* found "nothing to suggest that the electorate intended to impose a time-specific incorporation of the term 'criminal street gang' in the gang-murder special circumstance statute" (*id.* at p. 245). *Lee* concluded "that the term 'criminal street gang' as incorporated in the gang-murder special

22

circumstance statute was 'intended to conform at all times' and 'remain permanently parallel' to section 186.22." (*Ibid.*)

We agree with and adopt that reasoning and analysis. We accordingly conclude that Assembly Bill 333 did not unconstitutionally amend Proposition 21 by altering the definition of criminal street gang in the gang enhancement statute. We consequently vacate the true finding on the gang special circumstance under section 190.2, subdivision (a)(22).

5. *Sufficiency of Predicate Offenses Under Prior Law*

As already explained, the true findings on the gang enhancement allegation (§186.22, subd. (b)(1)), the gang special-circumstance allegation (§ 190.2, subd. (a)(22)), and the gang-related firearm enhancement (§ 12022.53, subds. (d), (e)(1)) all required a finding that the 2800 Blocc Crips constituted a criminal street gang.

Wilkerson argues that under the law as it existed when he was tried the evidence was insufficient to support the necessary finding that "[t]he most recent crime occurred within three years of one of the earlier crimes," because none of the predicate offenses occurred within three years of the September 2019 murder, the most recent possible predicate crime. He argues that the jury was instructed that it could consider only robbery and murder as predicate offenses and the 2017 incident did not involve either. He contends that the 2017 incident did not qualify as a predicate crime in any event because it involved "two drug-related offenses, neither of which qualified as predicate offenses under" former section 186.22, subdivision (e)." We disagree with the characterization of the 2017 incident as not including a qualifying predicate offense. We

consequently conclude that there was legally sufficient evidence of predicate offenses under then-existing law.

When reviewing the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment "to determine whether it discloses reasonable and credible evidence to allow a rational trier of fact to determine guilt beyond a reasonable doubt." (*People v. Cardenas* (2020) 53 Cal.App.5th 102, 119, fn. 11; *People v. Wilson* (2008) 44 Cal.4th 758, 806.) In reviewing the sufficiency of the evidence for purposes of deciding whether retrial is permissible for purposes of double jeopardy, we "must consider *all* of the evidence presented at trial . . . ." (*People v. Story* (2009) 45 Cal.4th 1282, 1296.) To determine whether there was sufficient evidence of predicate crimes under former section 186.22, subdivision (e), for purposes of double jeopardy, we accordingly consider all of the evidence of predicate offenses and not just the evidence the jury was instructed that it could consider.

There was substantial evidence under the law as it existed that two or more predicate offenses had been committed to establish the necessary pattern of criminal gang activity. The gang expert testified that the 2017 incident was one of the predicate crimes. Wilkerson is correct that the drug-related offenses related to the 2017 incident (Health & Saf. Code, §§ 11350, 11359, subd. (b), 11370.1, 11375, subd. (b)(1)) were not included in the list of offenses in subdivision (e) of former section 186.22 that can be considered as predicate offenses. (Former § 186.22, subd. (e)(4).) However, those were not the only charged offenses related to that incident. The defendants were also charged with one count of being a felon in possession of a firearm (§ 29800, subd. (a)(1)) and one count of

24

unlawful possession of a loaded firearm (§ 25805, subd. (c)(6)). Those offenses were among the offenses listed in former section 186.22, subdivision (e), that could be used to establish a "'pattern of criminal gang activity.'" (Former § 186.22, subd. (e)(31), (33).) The offenses were committed within three years of the charged murder, and the gang expert testified that the offenses were committed by two or more members of the 2800 Blocc Crips. The 2017 firearm offenses therefore qualify as predicate offenses under the law as it existed when Wilkerson was tried. Regardless of the instruction given to the jury (which erroneously stated that only robbery and murder could be considered as predicate offenses), there was legally sufficient evidence that a predicate offense was committed within three years of the charged murder.

Because there was sufficient evidence to support the criminal street gang finding necessary for the gang-related enhancements and the gang special circumstance under the law as it existed when Wilkerson was tried, we remand the matter for further proceedings on those allegations.

C. *Criminal Street Gang Stipulation*

Wilkerson contends that the trial court prejudicially erred by not compelling the prosecution to accept a stipulation that the 2800 Blocc Crips was a criminal street gang. Assuming for the sake of argument that the court erred, we conclude that the error was not prejudicial.

1. *Relevant Proceedings*

The prosecution filed numerous motions in limine before trial. In its second motion, the prosecution moved to introduce evidence of Wilkerson's "gang affiliation,

25

including gang expert testimony, and predicate offenses." At a pretrial hearing, the court indicated that it was inclined to grant the motion. The court then discussed the prosecution's next motion, which identified the specific predicate crimes that the prosecution sought to prove in order to show that the 2800 Blocc Crips is a criminal street gang. The court asked defense counsel: "But going back to Number Three which I think I skipped over, the evidence of predicate crimes, Number Three, would you like to respond at all . . . ?" Defense counsel responded, "No, other than as to offer to stipulate that the relevant gang, relevant gang is truly a gang. I don't think anybody is going to dispute whether or not it is a gang as defined by the Penal Code. So if we were to stipulate that it is a gang, then *that would render an unnecessary showing of the predicate crimes*, and therefore it would remove at least some of the prejudice. It would eliminate some of the detriment that is present when you are showing all of these crimes to the jury. These crimes are obviously not related to this crime, but they certainly have a prejudicial effect to the jury. So I would offer to stipulate that it is a gang." (Italics added.) The prosecution refused to stipulate and instead introduced evidence of several predicate offenses, as previously described.

    2. *Analysis*

    When a criminal "'defendant offers to admit the existence of an element of a charged offense, the prosecutor must accept that offer and refrain from introducing evidence . . . to prove that element to the jury.'" (*People v. Bonin* (1989) 47 Cal.3d 808, 849.) When the effect of a stipulation "would be to deprive the state's case of its persuasiveness and forcefulness," however, the prosecution cannot be compelled to

26

accept it. (*People v. Streeter* (2012) 54 Cal.4th 205, 238; *People v. Valdez* (2012) 55 Cal.4th 82, 130.) The trial court's decision not to compel the prosecutor to accept a stipulation concerns the admissibility of evidence, so we review the decision for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 724.)

Wilkerson argues that the prosecutor's refusal to stipulate that the 2800 Blocc Crips was a criminal street gang resulted in the erroneous admission of "a wealth of gang evidence at trial," including the gang expert's testimony about when the gang started, Wilkerson's family ties with the gang (including his father's and siblings' membership), the number of members in the gang and its tightknit nature, the gang's territory, the gang's propensity for violence, the predicate offenses, and gang-related incidents discovered during the wiretap investigation that occurred after the charged incident. Wilkerson's argument mischaracterizes the proposed stipulation and the effect that it would have had.

Wilkerson's counsel offered to stipulate that the 2800 Blocc Crips constituted "a gang as defined by the Penal Code," to render "unnecessary showing of the predicate crimes, and therefore it would remove at least some of the prejudice" because the predicate offenses were "obviously not related to" the killing of William. Thus, the sole purpose of defense counsel's proffered stipulation was to avoid admission of the predicate offense evidence. (Former § 186.22, subds. (e), (f).) Contrary to Wilkerson's argument, there is no indication in the record that defense counsel intended the stipulation to limit admission of any other gang-related evidence.

Assuming for the sake of argument that the trial court erred by not requiring the prosecutor to accept the stipulation that the 2800 Blocc Crips constituted a criminal street gang for purposes of not admitting the predicate offenses, we conclude that it was harmless even if evaluated under *Chapman*, *supra*, 386 U.S. at page 24. There was overwhelming evidence of Wilkerson's guilt. In addition to video recordings of Wilkerson at the scene before and during the shooting, an audio recording captured him repeatedly telling Smith to "Cap him" moments before Smith shot William. Moreover, gang evidence was otherwise relevant to prove the elements of the gang-related enhancements and the gang special circumstance, as well as the prosecution's theory of the case. The stipulation therefore would have eliminated only a small portion of the gang-related evidence that was admitted. Under these circumstances, it is clear beyond a reasonable doubt that the jury would have rendered the same verdict had the evidence of the predicate offenses been excluded.

D. *Prior Serious Felony Enhancement*

Wilkerson argues that the five-year prior serious felony enhancement must be vacated because he did not admit that the prior strike conviction constituted a "'serious prior'" for purposes of the enhancement. The argument lacks merit.

1. *Relevant Background*

The information alleged that on September 30, 2016, Wilkerson was convicted of the felony of discharging a firearm with gross negligence in violation of section 246.3, subdivision (a). It alleged that the conviction constituted a serious felony subject to a five-year enhancement under section 667, subdivision (a), and a strike for purposes of the

28

Three Strikes law under section 667, subdivisions (c) and (e)(1), and section 1170.12, subdivision (c)(1). As to the prior strike allegation, the information alleged that the conviction constituted "a serious *and* violent felony . . . within the meaning of Penal Code sections 667, subdivisions (c) and (e)(1), and 1170.12, subdivision (c)(1)." (Italics added.)

After the jury returned its verdict, Wilkerson admitted the prior strike allegation. Addressing Wilkerson, the court described that allegation as "the strike allegation under [section] 667[, subdivision] (c) and (e)(1) and [section] 1170.12[, subdivision] (c)(1)" that resulted from a conviction on September 30, 2016. The court asked Wilkerson: "So as to that strike prior in that case, . . . indicating that you were convicted of the crime of discharging a firearm with gross negligence, . . . it is my understanding that you are admitting that strike allegation. [¶] Do you admit or deny that allegation, sir?" Wilkerson responded, "I admit."

At sentencing, the trial court stated that for "[t]he five year prior under [section] 667[, subdivision] (a)(1), there was an admission to that, and it is true." The court declined to strike the enhancement and imposed a five-year sentence for it. Defense counsel did not object.

2. *Analysis*

Wilkerson argues that the trial court erred by imposing a five-year serious felony enhancement under section 667, subdivision (a), because he admitted only that the prior conviction constituted a strike and not that it was a serious felony. We disagree.

29

Subdivision (a)(1) of section 667 adds a five-year sentence for each of a defendant's prior "serious felony" convictions if the defendant is being sentenced for a conviction that also constitutes a serious felony. It defines "'serious felony'" by reference to subdivision (c) of section 1192.7. (§ 667, subd. (a)(4).) The Three Strikes law, by contrast, applies to "prior serious *or* violent felony convictions." (§ 667, subd. (c), italics added.) Violent felonies are those offenses "defined in subdivision (c) of Section 667.5," and serious felonies are those "defined in subdivision (c) of Section 1192.7." (§ 667, subd. (d)(1).)

Grossly negligent discharge of a firearm does not by itself qualify as a violent offense.[3] (§ 667.5, subd. (c)(1)-(23).) Subdivision (c) of section 1192.7 lists 42 categories of felonies that qualify as serious felonies. (§ 1192.7, subd. (c)(1)-(42).). Subdivision (c)(8) of section 1192.7 applies to "any felony in which the defendant personally uses a firearm," and "the grossly negligent discharge of a firearm constitutes a serious felony under section 1192.7, subdivision (c)(8)." (*People v. Leslie* (1996) 47 Cal.App.4th 198, 203.)

"A plea of guilty admits every element of the offense charged [citation], [and] all allegations, and factors comprising the charge contained in the pleading." (*People v. Tuggle* (1991) 232 Cal.App.3d 147, 154, disapproved on another ground in *People v.*

---

[3]  It appears that a conviction for grossly negligent discharge of a firearm could qualify as a violent offense only if additional great bodily injury or firearm enhancements were charged and proved, as specified in subdivision (c)(8) of section 667.5. No such enhancements were alleged in relation to Wilkerson's 2016 conviction.

*Jenkins* (1995) 10 Cal.4th 234, 252.)  The same holds true for the admission of a sentence enhancement allegation.  (*People v. Thomas* (1986) 41 Cal.3d 837, 844 (*Thomas*).)

Wilkerson admitted as true the strike allegation that he was convicted in 2016 of discharging a firearm with gross negligence, which was charged as "a serious and violent felony, in violation of section 246.3, subdivision (a), of the Penal Code, within the meaning of Penal Code sections 667, subdivisions (c) and (e)(1), and 1170.12, subdivision (c)(1)."  He thus admitted that the alleged prior felony was both serious and violent.  His admission that the prior strike conviction constituted a serious felony within the meaning of section 667, subdivisions (c) and (e)(1), is sufficient to establish the prior serious felony enhancement allegation.  (*Thomas*, *supra*, 41 Cal.3d at pp. 843, 845 [the defendant's admission that prior burglary convictions constituted serious felonies "within the meaning of sections 667 and 1192.7" was sufficient to establish the five-year prior serious felony allegations].)  Moreover, because grossly negligent discharge of a firearm does not qualify as a violent offense (§ 667.5, subd. (c)), the only way that Wilkerson's conviction could have qualified as a prior strike is as a serious felony under section 1192.7, subdivision (c).  (§ 667, subd. (c).)

For all of these reasons, we conclude that Wilkerson's admission that his prior conviction for grossly negligent discharge of a firearm constituted a serious felony "within the meaning of Penal Code sections 667, subdivisions (c) and (e)(1), and 1170.12, subdivision (c)(1)" was sufficient to warrant imposition of the five-year prior serious felony enhancement.

E. *Constitutionality of the Lying in Wait Special Circumstance and Instruction*

Wilkerson argues that the lying-in-wait special circumstance (§ 190.2, subd. (a)(17)) is unconstitutionally vague under the Fifth, Fourteenth, and Eighth Amendments "because it is functionally no different than the lying in wait theory for first degree murder." He also contends that the instruction on the special circumstance is unconstitutionally overbroad under the Eighth Amendment. As the parties agree, the California Supreme Court has repeatedly held to the contrary. (See e.g., *People v. Mataele* (2022) 13 Cal.5th 372, 422 [rejecting argument that lying-in-wait special circumstance and associated instruction are unconstitutional]; *People v. Parker* (2022) 13 Cal.5th 1, 60 [lying-in-wait special circumstance not unconstitutionally vague or overbroad]; *People v. Flinner* (2020) 10 Cal.5th 686, 751-752; *People v. Johnson* (2016) 62 Cal.4th 600, 636-637; *People v. Casares* (2016) 62 Cal.4th 808, 849, disapproved on another ground in *People v. Dalton* (2019) 7 Cal.5th 166, 214.) We are bound by that precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) We accordingly reject Wilkerson's challenge to the constitutionality of the lying-in-wait special circumstance and the related instruction.

DISPOSITION

We vacate the true findings on the gang-related enhancements (§§ 186.22, subd. (b)(1), 12022.53, subds. (d), (e)) and the gang special circumstance (§ 190.2, subd. (a)(22)). We remand to the trial court to give the People the opportunity to retry the enhancements and the special circumstance under the law as amended by Assembly

32

Bill 333 and to conduct further proceedings as appropriate.  In all other respects, the

judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.


I concur:

MILLER
Acting P. J.

33

[*People v. Wilkerson*, E077362]

FIELDS, J., Concurring and Dissenting.

I fully concur in all aspects of the majority opinion except its determination that "Wilkerson's admission that his prior conviction for grossly negligent discharge of a firearm constituted a serious felony 'within the meaning of Penal Code[1] sections 667, subdivisions (c) and (e)(1), and1170.12, subdivision (c)(1)' was sufficient to warrant imposition of the five-year prior serious felony enhancement." (Maj. opn., *ante*, at p. 31.)

Section 667.5, subdivision (c)(1)-(23) lists violent felonies for purposes of section 667.5. Section 246.3 does not fall within any of these provisions. Similarly, section 1192.7, subdivision (c), lists serious felonies for purposes of that statute, but a violation of section 246.3 does not fall within any of its provisions. Thus, by statutory definition, section 246.3, by itself, cannot constitute a serious or violent felony.

In California, "[a] plea of guilty is an admission of every element of the offense charged and is a conclusive admission of guilt. [Citations.] Such a plea is the equivalent of a verdict of a jury. [Citation.] After a plea of guilty, it is unnecessary to take any evidence on any of the elements of the crime charged." (*People v. McDaniels* (1958) 165 Cal.App.2d 283, 284-285.) Thus, defendant's admission that he was convicted of violating section 246.3 admits every element of that offense. However, the admission of every element of a section 246.3 violation is insufficient to establish that the offense is a serious felony within the meaning of section 667.5.

---

[1] Undesignated statutory references are to the Penal Code.

1

Section 246.3, subdivision (a), provides as follows: "Except as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a public offense and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170." Section 246.3 does not require that the defendant personally use a firearm. Thus, a defendant may be guilty under this section as an aider and abettor. (*People v. Golde* (2008) 163 Cal.App.4th 101, 112). A section 246.3 violation constitutes a serious felony if the defendant personally used a firearm in committing the offense. (§ 1192.7, subdivision (c)(8).)

I am troubled by the fact that defendant did not admit that he personally used a firearm in violating section 246.3, and there is no evidence in the record that indicates that he personally used a firearm, yet we are affirming the true finding on the serious felony allegation. In *People v Leslie* (1996) 47 Cal.App.4th 198 (*Leslie*), as in this case, the defendant did not admit that his prior conviction for violating section 246.3 was a serious felony when the defendant pled guilty to the offense. (*Leslie*, at p. 203.) But *Leslie* upheld the true finding that the defendant's prior section 246.3 conviction was a serious felony because the defendant admitted that he personally used a firearm in committing the offense when he entered his no contest plea on his current offense. (*Leslie*, at pp. 204-205.)

Here, by virtue of his plea, defendant admitted he aided and abetted the personal use of a firearm in committing his prior section 246.3 violation, but that is not the same as personally using a firearm. Defendant's admission that his prior section 246.3

2

conviction was a violent felony also does not constitute an admission that the conviction was a serious felony. (Maj. opn., *ante*, at p. 31; cf. §§ 667.5, subd. (c), 1192,.7, subd. (c) (8).)

Thus, I see no substantial evidence to support the true finding on this prior serious felony conviction allegation and would reverse the true finding based on insufficient evidence. (*People v. Bueno* (2006) 143 Cal.App.4th 1503, 1510.)

FIELDS _____
J.